UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAEED S. AOBAD,

                            Plaintiff,

            -v-

BUILDING SERVICE 32BJ PENSION
FUND, *et al.*,

                            Defendants.

23-CV-1730 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Saeed S. Aobad brings this action against Defendants Building Service 32BJ

Pension Fund and Building Service 32BJ Health Fund ("Defendants"),[1] alleging that he was

improperly denied disability benefits after he was injured on the job.

Before the Court is Defendants' motion for summary judgment. For the reasons that

follow, the motion is granted in part and denied in part.

I.      **Background**

A.      **Factual Background**[2]

Aobad was a porter for Temco Service Industries, Inc., from 2011 to 2021 (ECF No. 1

("Compl.") at 17), and an SEIU Local 32BJ union member from 2005 until the present (*see id.*;

---

[1] Aobad also names "Building Service 32BJ Benefit Funds" as a Defendant. However,
Defendants note in their Answer that this is not a separate entity but rather shorthand for the
health and pension funds combined. (ECF No. 9 at 1.)

[2] The facts set forth here are taken in part from Defendants' Rule 56.1 Statement. (ECF
No. 33.) Though Aobad did file a "Pre-trial statement" (ECF No. 35) and an "Affirmation in
Opposition" to the motion for summary judgment (ECF No. 37), Aobad failed to directly
respond to Defendants' Rule 56.1 statement. "If the opposing party fails to respond to the
moving party's Rule 56.1 Statement, then the material facts contained in the moving party's
statement are deemed admitted as a matter of law." *Wali v. One Source Co.*, 678 F. Supp. 2d
170, 177-78 (S.D.N.Y. 2009) (Freeman, M.J.). While *pro se* litigants are not excused from Local

ECF No. 33 ("Defs.' SOMF") at 8).  Defendants are "jointly administered benefit funds" created

under the Taft-Hartley Act, 28 U.S.C. § 186, and administered by "management and union

trustees."  (Defs.' SOMF at 1-2.)

Defendants offer two types of disability benefits that are relevant to the present motion:

"Long Term Disability" ("LTD") benefits of $250 a month, and a larger "Disability Pension."

(*See id.* at 6-7.)

To qualify for LTD benefits, an employee "must have had at least 36 consecutive months

of Health Plan eligibility immediately prior to the date [he] stopped working due to the

disability . . . ."  (*Id.* at 6.)  During this 36-month period, the employee may have an "[a]pproved

leave[] of absence for up to six months."  (*Id.* at 4.)

To qualify for a Disability Pension, an employee must have "become totally and

permanently disabled while working . . . ."  (*Id.* at 7.)  Defendants determine whether someone is

"totally and permanently disabled," thus qualifying for the Disability Pension, by looking to the

determination of the Social Security Administration (SSA).  (*Id.*)  In granting disability status,

the SSA also sets a review period after which an applicant must have their documentation and

injury reviewed to continue coverage.  (*See id.*)  Defendants' policy is that the SSA must set an

employee's review period at "5 or more years" for the employee to qualify as "permanently

disabled" and receive the Disability Pension.  (*Id.*)

In January 2016, Aobad "sustained a work-related injury" to his back.  (ECF No. 35

("Opp.") at 11.)  Because of this injury, he received worker's compensation from the New York

---

Rule 56.1, "the Court retains some discretion to consider the substance of the plaintiff's
arguments, where actually supported by evidentiary submissions."  *Id.* at 178.  Therefore, the
Court relies on additional factual assertions made by Aobad in his complaint (ECF No. 1) and
submissions in opposition to Defendants' motion for summary judgment (ECF Nos. 35, 37).

Worker's Compensation Board from January 26, 2016, to February 24, 2016, and then again from September 26, 2017, to February 5, 2018.  (*Id.*)

In November 2018, while "on the job," Aobad "fell down a ramp and injured [himself]." (Compl. at 3, 6.)  On March 1, 2019, he stopped working due to the injury and went on worker's compensation.  (*See id.*; Defs.' SOMF at 5.)  Defendants told Aobad that he would need an SSA award letter in order to qualify for disability benefits, so in 2021 Aobad obtained documentation that he had been approved for Social Security payments due to his disability.  (*See* Compl. at 6, 9-12.)  The letter from the SSA stated:  "Doctors and other trained staff decided that you are disabled under our rules.  But, this decision must be reviewed at least once every 3 years."  (*Id.* at 11.)  Aobad shared this letter with Defendants "[o]n or about May 10, 2021."  (Defs.' SOMF at 5.)

On June 22, 2021, Defendants denied Aobad both LTD benefits and a Disability Pension. (*Id.* at 6-7.)  In this initial denial letter, Defendants explained that Aobad was ineligible for the Disability Pension because his SSA letter set review at "once every 3 years," and he would have had to have a review "every 5 to 7 years" to qualify as "totally and permanently disabled" and thus eligible for the Pension.  (*Id.* at 7.)  Defendants also wrote that Aobad did not qualify for LTD benefits because:

> [O]ur records indicate a **break in eligibility in the Plan from September 9, 2017 through February 15, 2018**. . . . In order to perfect your claim for LTD, you would need to provide the Fund with evidence that you had eligibility in the Plan from September 9, 2017 through February 15, 2018.  Acceptable documentation would include a copy of your DB450 (short term disability award), Worker's Compensation Award, or a copy of payroll stubs for the dates in question.  Upon receipt, your application will be reevaluated for disability benefits.

(*Id.* (emphasis added).)

Aobad filed a timely appeal of Defendants' decision and submitted further documentation of his injury and his SSA award letter. (*Id.* at 8-9.)  On December 14, 2021, Defendants' Appeals Committee held an appeals hearing, and two days later it affirmed the denial of LTD benefits and a Disability Pension. (*Id.* at 10.)  In this second denial letter, Defendants explained the same reasoning as before for their denial of a Disability Pension:  Aobad's SSA letter provided for review "every 3 years," and it would have to provide for review "every 5 to 7 years" for Aobad to be qualified for the Pension. (*See id.*)  However, regarding LTD benefits, Defendants changed the dates they alleged that Aobad was on short-term leave, stating:

> [O]ur records indicate **you were on workers' compensation from July 11, 2017 through February 15, 2018, a total of over 7 months**.  Because the Health Fund only counts up to 6 months of short-term disability toward satisfaction of the 36 months eligibility requirement . . . [you] did not satisfy the 36 month eligibility requirement."

(*Id.* (emphasis added).)

While the first denial letter indicated that Aobad had been on leave for just over five months, and thus within the six-month period permitted by Defendants' LTD benefits policy, the second denial letter indicated that Aobad had been on leave for just over seven months, disqualifying him from LTD benefits.

### B.    Procedural History

Aobad commenced this action on February 28, 2023.  (Compl.)  Defendants filed a motion for summary judgment on April 5, 2024.  (ECF No. 30.)  Aobad opposed the motion in submissions filed on April 8, 2024 (Opp.) and April 26, 2024 (ECF No. 37).  Defendants replied in support of their motion on May 7, 2024.  (ECF No. 39 ("Reply").)

## II.    Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is

material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court may grant a motion for summary judgment only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, a court must "resolve all ambiguities and draw all permissible inferences in favor of the party against whom summary judgment is sought." *Friend v. Gasparino*, 61 F.4th 77, 84 (2d Cir. 2023) (quotation marks omitted).

Aobad is litigating his case *pro se*. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (quotation marks omitted). As such, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks omitted). But even with the benefit of these special considerations, "a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## III.    Discussion

Defendants offer three arguments in their motion for summary judgment: (1) that the Court lacks jurisdiction under the Americans with Disabilities Act ("ADA") because Taft-Hartley funds are not "employers" under the statute; (2) that Aobad has failed to present evidence of discrimination on the basis of disability; and (3) that the Employee Retirement Income Security Act ("ERISA") should not be considered because Aobad did not raise it, but if the Court conducts an ERISA review, there was no abuse of discretion. The Court addresses each argument in turn.

A.      **Jurisdiction Under the ADA**

Defendants first argue that the Court lacks jurisdiction to decide an ADA claim against them because "Taft-Hartley funds are simply not subject to the ADA."  (ECF No. 31 ("Mem.") at 2.)

Title I of the ADA applies to discrimination by a "covered entity," and prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A "covered entity" is defined in the statute as "an employer, employment agency, labor organization, or joint labor-management committee."  42 U.S.C. § 12111(2).

Defendants, which are "jointly administered benefit funds" administered by "management and union trustees," argue that they are "clearly not an employer of the Plaintiff." (*See* Mem. at 3; Defs.' SOMF at 1-2.)  However, case law in this Circuit supports the opposite conclusion.  In *Spirt v. Teachers Insurance and Annuity Association*, the Second Circuit determined that benefit funds qualified as "employers" in the Title VII context, reasoning that "exempting [benefit] plans not actually administered by an employer would seriously impair the effectiveness of Title VII."  691 F.2d 1054, 1063 (2d Cir. 1982), *vac'd on other grounds*, 463 U.S. 1223 (1983).  And the Second Circuit has often "looked [to Title VII] in interpreting the ADA."  *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 151 (2d Cir. 2000); *see also DeNardi v. DRA Imaging, P.C.*, 605 F.Supp.2d 550, 557 (S.D.N.Y. 2009) ("The term 'employer,' as it is used in Title VII and related discrimination statutes, is sufficiently broad to encompass any party who significantly affects the access of any individual to employment opportunities.").

Further, other judges in this District have held that separate benefit funds do qualify as "employers" under the ADA.  *See, e.g.*, *Mason Tenders Dist. Council Welfare Fund v.*

*Donaghey*, No. 93-CV-1154, 1993 WL 596313, at *3 (S.D.N.Y. Nov. 19, 1993); *Raymond v.*

*1199SEIU Nat'l Benefit Fund*, No. 20-CV-10380, 2023 WL 4637626, at *4 (S.D.N.Y. July 20,

2023). In *Mason Tenders*, Judge Sprizzo reached that conclusion by focusing on the fact that

Congress intended to prevent employers from "using a fund as a pretext to avoid liability under

the [ADA]." 1993 WL 596313, at *3. Ultimately, the court determined that "the law is

overwhelming[] . . . on this issue." *Id.* at *8.

    Defendants thus qualify as "employers" under the ADA and, accordingly, this Court has

jurisdiction to adjudicate claims brought against them under the statute.[3]

### B.    ADA Disability Discrimination

    Aobad alleges that he was denied LTD benefits and a Disability Pension, as well as "a

severance or termination benefit," because of his disability and in violation of the ADA.

(Compl. at 17.) Defendants argue that summary judgment is warranted because the denial was

based on neutral criteria and there was no intent to discriminate. (Mem. at 5.)

    "Claims alleging disability discrimination in violation of the ADA are subject to the

burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 93 (1973)." *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d

92, 96 (2d Cir. 2009). To survive a motion for summary judgment, a plaintiff alleging an ADA

---

[3] Defendants may also qualify as "joint labor-management committee[s]," which are covered entities under Title I. *See* 42 U.S.C. § 12111(2). While "neither the ADA nor [binding] case law defines the term 'joint labor-management committee,'" another court in this Circuit has defined this term as an entity with "operations [] designed and overseen by a committee consisting of representatives from both labor and management." *Infantolino v. Joint Indus. Bd. of Elec. Indus.*, 582 F. Supp. 2d 351, 358 (E.D.N.Y. 2008). Defendants describe themselves as "jointly administered benefit funds" which are "administered by an equal number of management and union trustees," and would thus fall under this definition. (Defs.' SOMF at 1-2.) However, because Defendants qualify as "employers" under the ADA, there is no need to reach a definitive conclusion on this question.

claim must establish a prima facie case that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001) (quoting *Heyman v. Queens Vill. Comm. for Mental Health*, 198 F.3d 68, 72 (2d Cir. 1999)).

The Court has determined that the Defendants are subject to the ADA, and Defendants do not challenge the status of Aobad's disability under the statute. However, Aobad fails to make a sufficient showing of the third and fourth prongs of the prima facie case—that he could perform the essential functions of the job and that he suffered an adverse employment action as a result of discrimination. As the Second Circuit has explained, "[i]f [Plaintiff] is totally disabled, then he cannot perform the essential functions of his job or any job." *Potter v. Xerox Corp.*, 1 F. App'x 34, 36 (2d Cir. 2001) (summary order). And even assuming that denial of disability benefits is an "adverse employment action," a premise that has been questioned or rejected by multiple courts in this Circuit,[4] Aobad fails to connect Defendants' denial to his disability. There is no genuine dispute that Defendants denied him a Disability Pension because his disability did not reach the threshold of severity required under their policy for the more robust benefits. (*See* Defs.' SOMF at 7.) As the Second Circuit has held:

> The ADA . . . does not specifically condemn the historic and nearly universal practice inherent in the insurance industry of providing different benefits for

---

[4] *See, e.g.*, *Dedyo v. Baker Eng'g N.Y., Inc.*, No. 96-CV-7152, 1998 WL 9376, at *12 (S.D.N.Y. Jan. 13, 1998) ("[A] simple denial of entitlement under a disability plan does not state a claim under the ADA."); *Jernigan v. NYCERS*, No. 08-CV-3829, 2010 WL 1049585, at *3 n.4 (E.D.N.Y. Mar. 18, 2010) ("It is not clear to this Court that the denial of disability benefits, after Plaintiff was terminated from his employment (an action that he does not now challenge), can ever constitute the type of adverse employment action for which the ADA provides a remedy. Other courts in this circuit addressing this question have concluded that it cannot.").

different disabilities. . . . [S]o long as every employee is offered the same plan regardless of that employee's contemporary or future disability status, then no discrimination has occurred even if the plan offers different coverage for various disabilities.

*Staten Island Sav. Bank*, 207 F.3d at 150 (quotation marks omitted).

Further, Aobad has provided no additional evidence of discrimination—only his conclusory assertion that the denial of long-term benefits was because of discrimination. (*See* Compl. at 17.) That is not sufficient to survive summary judgment.

Aobad's case simply does not fit into the *McDonnell Douglas* framework courts use in analyzing ADA claims. It is for that very reason that the Second Circuit wrote in a parallel case: "[Plaintiff] may well have been wrongly denied long term disability benefits . . . , but the ADA is not the proper vehicle for pursuing such a claim." *Potter*, 1 F. App'x at 36. Rather, the *Potter* court instructed, such a claim is better brought under ERISA. *See id.*

Defendants are therefore entitled to summary judgment on Aobad's ADA discrimination claim.

### C.    ERISA Benefit Denial

Defendants argue that the Court "may not unilaterally read [an ERISA claim] into the Complaint" because Aobad "seeks relief only under the ADA." (Mem. at 5.) However, the Second Circuit has held "[o]n occasions too numerous to count," *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), that complaints by *pro se* plaintiffs must be "construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks omitted).

Aobad's pleadings suggest an ERISA claim. Aobad states that Defendants "fabricated dates" in the two denial letters they sent him and that their denial "constitutes a breach of their

duty to act in good faith and in accordance with the law." (Opp. at 1.) He explains that he

"provided evidence, including workers' compensation records, to substantiate [his] periods of

absence from work and establish [his] eligibility for benefits," yet he was still denied disability

benefits. (*Id.* at 2.) All of this, Aobad contends, "warrants closer scrutiny" "as outlined in the

Employee Retirement Income Security Act (ERISA)." (ECF No. 37 at 4.) Further, Defendants

themselves told Aobad that if he "disagree[d]" with their benefit denial, he had "the right to

bring a civil action in a court of law challenging the decision pursuant to Section 502(a) of the

Employees Retirement Income Security Act (ERISA)." (Defs. SOMF at 11.) Thus, Aobad's

argument that Defendants unjustly denied him disability benefits is adequate to raise an ERISA

claim.

Defendants alternatively argue that, should the Court entertain an ERISA claim,

Defendants' decision should be reviewed for abuse of discretion due to the "sole and absolute

discretion" afforded to their administrators. (Mem. at 6.) Further, Defendants contend, the

denial of a Disability Pension and LTD benefits survives scrutiny because Defendants based

their decision on neutral criteria, enumerated in their benefit plan policy. (*Id.*)

ERISA § 502(a)(1)(B) allows a plan participant to bring a civil suit "to recover benefits

due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). When, as is the case here,

"the benefit plan gives the administrator or fiduciary discretionary authority to determine

eligibility for benefits or to construe the terms of the plan," the Court reviews a denial of benefits

under the arbitrary-and-capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S.

101, 115 (1989). This means that a denial of benefits may be overturned "if the decision is

without reason, unsupported by substantial evidence or erroneous as a matter of law." *Fay v.*

*Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002) (quotation marks omitted).

Defendants' decision to deny Aobad a Disability Pension survives a review under this standard.  Defendants' stated policy included the clear, consistent terms that an employee must have become "permanently and totally disabled" on the job, as measured by the SSA's determination that an employee's review period for SSA benefits will be "no more frequently than once in five years."  (Defs.' SOMF at 5.)  In the two denial letters sent to Aobad, Defendants explained that Aobad did not qualify for a Disability Pension because his SSA review was set for "once every 3 years."  (*Id.* at 7, 10.)  That decision was reasonable and supported by Aobad's SSA award letter that he submitted to Defendants.  Because the Pension denial was not arbitrary and capricious, Defendants' motion for summary judgment is granted on Aobad's claim with respect to the Disability Pension.

However, the same cannot be said for Defendants' denial of LTD benefits to Aobad. Defendants' policy states the following relevant requirement to receive LTD benefits:

> As of the date you stopped working due to disability, you had at least 36 consecutive months of eligibility in the Building Service 32BJ Health Fund's Metropolitan Plan as a result of **covered employment**, and the 36 consecutive months of eligibility were immediately prior to the date you stopped working due to the disability. Approved leaves of absence for up to six months during which health care coverage is continued, e.g., the Family and Medical Leave Act ("FMLA"), leave of absence, short-term disability, Workers' Compensation and Arbitration, during the 36 month period will count toward eligibility for this purpose.

(*Id.* at 4 (emphasis in original).)

Yet Aobad received conflicting information about this six-month approved leave in the two denial letters Defendants sent to him.  In their June 22, 2021, letter, Defendants wrote:

> During the last 36 consecutive months prior to your last day worked, our records indicate a break in eligibility in the Plan from **September 9, 2017 through February 15, 2018**.  Accordingly, you are not eligible for LTD benefits, and your application is denied.

(*Id.* at 7 (emphasis added).)  But in their December 16, 2021, letter, Defendants wrote:

> During the 36 consecutive months prior to March 21, 2019, our records indicate you were on workers' compensation from **July 11, 2017 through February 15, 2018**, a total of over 7 months.  Because the Health Fund only counts up to 6 months of short-term disability toward satisfaction of the 36 months eligibility requirement, you incurred a break in eligibility from January 11, 2018 through February 15, 2018 and therefore did not satisfy the 36 month eligibility required.

(*Id.* at 11 (emphasis added).)  While the first letter indicates that Aobad was absent for just over five months, which would be within the six-month period covered by the plan, the second letter extends this timeline to just over seven months, which would render Aobad ineligible under the plan's criteria.  This discrepancy in dates is further complicated by Aobad's contention that he was absent from work "only for four months and ten days, well within the acceptable limit" (ECF No. 37 at 2), and his worker's compensation award letter, which states that Aobad received worker's compensation benefits from September 26, 2017, to February 5, 2018 (Opp. at 11).

Defendants fail to adequately explain this discrepancy.  In their reply in support of their motion for summary judgment, Defendants argue that "Aobad is confusing the time periods designated in his award from Worker's Compensation (four months and ten days), with the actual period of time that he was out of work and not employed in covered employment (a period of in excess of seven months)."  (Reply at 3.)  Yet Defendants' second letter states: "[O]ur records indicate you were on workers' compensation from July 11, 2017 through February 15, 2018."  (Defs.' SOMF at 11.)  Defendants also produce a screenshot that purports to prove that Aobad was on "Leave" for the reason of "Workers Comp" from July 11, 2017, to February 15, 2018.  (*See* ECF No. 38-1 at 2.)  However, the screenshot is blurry, hard to read, and cropped to eliminate necessary context.  (*See id.*)  Further, Defendants fail to explain how this data is tracked or submitted.

Based on the contradictory evidence produced thus far and the unexplained discrepancies in Defendants' records, rational triers of fact could disagree as to whether Defendants abused their discretion in denying Aobad LTD benefits.

Defendants' motion is thus denied on Aobad's ERISA claim with respect to the denial of LTD benefits.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

The Clerk of Court is directed to close the motion at Docket Number 30 and mail a copy of this opinion and order to the *pro se* Plaintiff.

SO ORDERED.

Dated:  November 4, 2024
        New York, New York

_____
        J. PAUL OETKEN
      United States District Judge